**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | |
| ARENA FOOTBALL LEAGUE, LLC, ) | Case No. 09-29024 |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | Hon. Susan Pierson Sonderby |
| ) | |
| ) | |
| ARENA FOOTBALL LEAGUE, LLC, ) | |
| ) | Adv. Pro. No. 09-00848 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NATIONAL LABOR RELATIONS BOARD, ) | |
| and ARENA FOOTBALL OFFICIALS ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendants. ) | |

**NOTICE OF MOTION
FOR DETERMINATION THAT STAY
APPLIES TO NLRB ACTIONS, OR ALTERNATIVELY,
FOR TEMPORARY RESTRAINING
<u>ORDER RELATED TO NLRB PROCEEDINGS</u>**

    **PLEASE TAKE NOTICE,** that at 10:00 a.m. on September 21, 2009, the undersigned shall appear in Courtroom 642 of the Everett McKinley Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois before the Honorable Susan Pierson Sonderby, United States Bankrupcy Judge for the Northern District of Illinois, Eastern Division, and shall present the attached Motion for Determination that Stay Applies to NLRB Actions, or alternatively, for Temporary Restraining Order Related to NLRB Proceedings, at which time and place you may appear if you see fit.

Respectfully submitted,

ARENA FOOTBALL LEAGUE, LLC

By: /s/ William J. Factor

One of its attorneys

William J. Factor (6205675)
**THE LAW OFFICE OF
   WILLIAM J. FACTOR, LTD.**
1363 Shermer Road, Suite 224
Northbrook, IL  60062
(847) 239-7248
(847) 574-8233
wfactor@wfactorlaw.com

# **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on this, the 14th day of September, 2009, he personally caused a copy of the attached Notice of Motion and the accompanying Motion to be served upon the following entities in the manner designated below.

/s/ William J. Factor

Daniel L. Hubbel
Regional Director
National Labor Relations Board
Seventeenth Region
8600 Farley Street - Suite 100
Overland Park, Kansas 66212-4677
Via Fax: (913) 967-3010

Michael Werner
National Labor Relations Board
224 S. Bouylder Ave., Suite 318
Tulsa, OK  74103
Via Fax: (918) 581-7970

Paul Engelberts
President
Arena Football Officials Assoc.
3124 Ferris Avenue
Royal Oak, MI  48073
Via Fax: (248) 588-0105

Michael C. Arnold, Esq.
Attorney for AFOA
1125 Grand Boulevard
Suite 1600
Kansas City, MO  64106
Via Fax: (816) 471-5574

William Neary
United States Trustee
219 S. Dearborn Street
8th Floor
Chicago, IL  60604
Via ECF/CM

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ARENA FOOTBALL LEAGUE, LLC, | ) | Case No. 09-29024 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | Hon. Susan Pierson Sonderby |
| | ) | |
| ARENA FOOTBALL LEAGUE, LLC, | ) | |
| | ) | Adv. Pro. No. 09-00848 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL LABOR RELATIONS BOARD, and ARENA FOOTBALL OFFICIALS ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR DETERMINATION THAT STAY**
**APPLIES TO NLRB ACTIONS, OR ALTERNATIVELY,**
**FOR TEMPORARY RESTRAINING**
**ORDER RELATED TO NLRB PROCEEDINGS**

The Arena Football League, LLC, as debtor and debtor in possession in the captioned Chapter 11 case (the "AFL"), hereby requests that the Court enter an Order (a) determining that the automatic stay bars the captioned Defendants from pursuing a Complaint before the National Labor Relations Board or, in the alternative, (c) temporarily restraining the Defendants from pursuing such Complaint. In support of such relief, the AFL states as follows.

**INTRODUCTION**

1. On August 20, 2009, the National Labor Relations Board (the "NLRB") issued a complaint (the "Complaint") against the AFL to compel the AFL, against its wishes, to execute a

1

collective bargaining agreement with the bargaining group for certain non-player former employees of the AFL ("AFOA"). The AFOA represents the individuals that in the past served as referees for AFL games (the "Referees").

2.      The NLRB advised that it intends to proceed with the Complaint and it intends to proceed with a hearing on the Complaint on October 20, 2009 in Kansas City, notwithstanding the automatic stay. On information and belief, the NLRB contends its actions are not subject to the automatic stay on the grounds that such actions are within the ambit of §362(b)(4) of the Bankruptcy Code. 11 U.S.C. § 362(b)(4). Section 362(b)(4) is commonly known as the police and regulatory power exception to the stay.

3.      Also on information and belief, the NLRB intends to enter a judgment of default against the AFL unless the AFL participates in the NLRB proceedings, notwithstanding the automatic stay and the lack of resources to participate in the NLRB proceedings. Concern about the entry of a default judgment has prompted the AFL to seek a temporary restraining order.

4.      Although the AFL acknowledges that §362(b)(4) authorizes some actions by governmental units subsequent to a bankruptcy filing, §362(b)(4) does not authorize the NLRB to force the AFL to execute a collective bargaining agreement post-petition, nor does it authorize the NLRB to pursue this matter post-petition. Such actions greatly exceed the scope of §362(b)(4).

5.      In this instance, the primary focus of the Defendants is not to give former employees who belonged to the bargaining unit the protections of a collective bargaining agreement in order to protect their health and safety. Defendants are *not* focused on ensuring that the Referees are subject to safe and healthy working conditions because the AFL is not operating and is not using the services of the Referees. Instead, the Defendants' actions are

2

focused on enhancing the *economic rights* of the Referees in this bankruptcy case. Section 362(b)(4) does not allow that.

6. Thus, in this case the AFL is seeking an Order declaring that the NLRB's actions violate the automatic stay because those actions are not excepted by §362(b)(4).

7. Alternatively, if the Court determines that the NLRB's actions are technically covered by §362(b)(4), the AFL requests that the Court exercise its powers under §105 and Bankruptcy Rule 7065 to enjoin the Defendants from proceeding with the Complaint.

8. An injunction is proper in this instance because Defendants' actions threaten the administration of the Bankruptcy Estate.

## BACKGROUND

9. The AFL is a professional indoor football league with a principal place of business in Chicago. The AFL consists of various teams in different cities. For example, the Chicago Rush is the AFL team in Chicago. The AFL suspended the 2009 season on account of financial difficulties. At present, the AFL is not operating and has no employees.

10. On August 7, 2009, the AFL was unexpectedly pushed into an involuntary bankruptcy proceeding. On August 26, 2009, the Court entered an Order for relief and this case was converted to a Chapter 11 proceeding.

11. The AFL's assets consist mainly of intellectual property and other intangibles, as well as an interest in the AF2, which is akin to a minor league for the AFL. Fifth Third Bank has asserted a lien upon substantially all of the AFL's assets to secure a loan of approximately $7.5 million. At present, the AFL is evaluating its options as a Chapter 11 debtor in possession. One

3

option involves a sale of substantially all assets. Another option involves a traditional restructuring under Chapter 11.

12. The NLRB is a federal administrative agency with authority to regulate certain matters involving labor and collective bargaining agreements. The AFOA is a bargaining group for certain non-player employees of the AFL. On or about June 24, 2009, the AFOA filed with the NLRB a labor charge against the AFL.

13. On August 20, 2009 (subsequent to the petition date), the NLRB served a Complaint against the AFL, seeking to force the AFL to sign a 5-year collective bargaining agreement with AFOA. A copy of the Complaint is attached as Exhibit 1.

14. Notwithstanding the automatic stay, Defendants continue to pursue their actions against the AFL, insisting, among other things, that the AFL answer the Complaint by September 14, 2009, and participate in a hearing on this matter for October 20, 2009.

## ARGUMENT

### I. THE AUTOMATIC STAY UNDER § 362(A) IS A BASIC PROTECTION AFFORDED A DEBTOR

15. Section 362(a) bars "the commencement or continuation . . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title. . . ." 11 U.S.C. § 362(a).

16. This section provides one of the most fundamental bankruptcy protections. It prevents the dismemberment of the debtor's assets. It allows the debtor the breathing room to reorganize or to arrange an orderly liquidation. It centralizes all the debtor's disputes in the bankruptcy court so reorganization can proceed efficiently, unimpeded by uncoordinated

4

proceedings in other arenas.  *Shugrue v. Air Line Pilots Association, International (In re Ionosphere Clubs, Inc. and Eastern Airlines, Inc.)* 922 F. 2nd 984, 990 (2nd Cir. 1990).

## II. THE DEFENDANTS' ACTIONS ARE VIOLATING THE AUTOMATIC STAY AND ARE NOT PROTECTED BY THE §362(b)(4) POLICE AND REGULATORY POWER EXCEPTION TO THE STAY

17. On information and belief, Defendants believe that §362(b)(4) permits them to ignore the clear mandate of the automatic stay and to proceed with efforts to force the AFL to execute a collective bargaining agreement with AFOA.  It does not.

18. "Section 362(b)(4) provides in relevant part: (b) 'The filing of a petition under section 301, 302, or 303 of this title,…does not operate as a stay… (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power…'" *In re Pincombe*, 256 B.R. 774, 781 (Bankr. N.D. Ill. 2000).

19. Section 362(b)(4) was designed to give government units "the power to protect the public's health, welfare, morals and safety," and is to be given a narrow construction.   124 Cong. Rec. H 11092, H 11093 (Sept. 28. 1978).

20. In order for §362(b)(4) to apply, the government's actions must involve the exercise of a "regulatory power."  "The term 'regulatory power' is not defined in the Bankruptcy Code.  However, 'the statute's legislative history states that § 362(b)(4) includes a governmental unit's suits against a debtor 'to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws.'" *In re Auto. Prof'ls, Inc.*, 2007 Bankr. LEXIS 2177 (Bankr. N.D. Ill. July 3, 2007) (citing *In re Phillips*, 368 B.R. 733 (Bankr.

5

N.D.Ind. 2007) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977); *In re Herrera*, 194 B.R. 178, 184-85 (Bankr. N.D. Ill. 1996).

21. The caselaw establishes that a governmental unit is not exercising its regulatory power when it is acting to protect or elevate the rights of one group of creditors over the rights of others. In *Cash Currency*, the Seventh Circuit "found that the State's interest was to protect the rights of other creditors, an interest that is not regulatory within the meaning of § 362(b)(4)…" *In re Cash Currency*, 762 F.2d 542, 553 (7th Cir. 1985). *See also Auto. Prof'ls, supra.* (holding that §362(b)(4) did not authorize actions of insurance regulators because such actions were mainly designed to protect economic rights).

22. In this case, §362(b)(4) does not apply facially to Defendants' actions because those actions are designed mainly to give the Referees the economic benefits of an unexpired collective bargaining agreement under the Bankruptcy Code. The NLRB is not trying to prevent or remedy unsafe or unhealthy working condition or fraud, nor is it trying to protect the environment or to stop employment discrimination. Indeed, in this case, the NLRB or AFOA is not even trying to extend the protections of a collective bargaining agreement to bargaining unit employees inasmuch as the AFL is not conducting a season this year and it is not employing any Referees.

23. It also is notable that the NLRB did not file the Complaint until *after* the AFL was pushed into bankruptcy. This fact helps to highlight that the Complaint was filed and is being pursued mainly to enhance whatever economic claims the Referees might have in this case and it is not a vehicle to protect the health and safety of Referees.

24. Furthermore, the Defendants' actions are not within the purview of §362(b)(4) pursuant to the "pecuniary purpose test." This test, which is similar to the one the Seventh

6

Circuit employed in *Cash Currency*, evaluates whether the action by the government unit "would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate." *Emerald Casino, Inc. v. Ill. Gaming Bd. (In re Emerald Casino, Inc.)*, 2003 U.S. Dist. LEXIS 23216 (N.D. Ill. Dec. 23, 2003); *In re Charter First Mortgage, Inc.*, 42 Bankr. 380, 382 (Bankr. D. Or. 1984); *Herman v. Brown*, 160 B.R. 780, 783 (E.D. La. 1993).

25. Courts employing the "pecuniary purpose test" generally hold that "if the focus of the police power is directed at the debtor's financial obligations rather than the state's health and safety concerns, the automatic stay is applicable." *In re Ellis*, 66 B.R. 821, 825 (N.D. Ill. 1986); *Emerald Casino*, *supra.*

26. In this instance, the Defendants' are focused mainly (and potentially exclusively) on the AFL's financial obligations, rather than health and safety concerns. Once again, the AFL is not operating and not employing Referees. If the NLRB tries to force the AFL to sign a collective bargaining agreement with the AFOA and for the benefit of the Referees, the AFOA and its Referee members would receive a substantial economic and strategic benefit in relation to the AFL's bankruptcy estate. They would gain the benefits and rights of entities protected by an unexpired collective bargaining agreement. *See* 11 U.S.C. § 1113. Otherwise, why would the NLRB or the AFOA have any concerns about whether the AFL signed a collective bargaining agreement at this time?

27. Thus, under the pecuniary purpose test, the NLRB is trying to gain an unfair economic advantage for the benefit of the Referees. The exception to the stay was not intended to be wielded in that manner and the NLRB's actions are violative of the stay.

### III. ALTERNATIVELY, THE COURT SHOULD ENJOIN THE NLRB'S ACTIONS BASED UPON ITS SECTION 105 POWERS

28.   Alternatively, if §362(b)(4) does apply in this situation, the AFL asks the Court to use its powers under §105 and Federal Rule of Bankruptcy Procedure 7065 to temporarily enjoin the Defendants from proceeding with their Complaint against the AFL. Section 105 and Rule 7065 are the proper mechanism to stop a governmental unit whose actions, although technically excepted from the stay under §362(b)(4), threaten the bankruptcy estate. Section 105 has been used to enjoin the actions of the NLRB. *National Labor Relations Board v. Superior Forwarding, Inc.*, 762 F.2d 695, 698 (8th Cir. 1985) (enjoining the NLRB from filing or processing unfair labor practice charges) (collecting cases).

29.   In *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. Ill. 1998), the Seventh Circuit held that a bankruptcy court could enjoin actions under § 105 "when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it. In other words, the court does not need to demonstrate an inadequate remedy at law or irreparable harm." *Id. See also Matter of L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993).

30.   In this case, the NLRB's actions do threaten the integrity of the AFL's bankruptcy estate and do threaten to impair meaningfully the AFL's ability to implement a successful Chapter 11 case.

31.   The AFL has been a debtor in possession for approximately 2 weeks, after being unexpectedly pushed into an involuntary proceeding. The AFL needs time to consider its options and to evaluate how it will proceed and how it will maximize the value of its assets. One potential option involves a sale of assets under §363 and another option involves a reorganization under §1129.

8

32. These options, however, will be negatively impacted and perhaps even foreclosed if the AFL is directed to execute a collective bargaining agreement.

33. Just by way of example, the AFL's ability to sell its assets to an entity interested in restarting the league may be negatively impacted, if not foreclosed, if the AFL is forced to sign a collective bargaining agreement and the AFOA or the NLRB then asserts that a purchaser must assume the collective bargaining agreement in order to acquire the AFL's assets.

34. Additionally, if the AFL is deemed to be a party to a collective bargaining agreement, in all likelihood it will seek to reject the agreement under § 1113 because it is not operating, not using the services of the Referees and neither the AFL, nor the Referees need a collective bargaining agreement.

35. The AFL will thus have to expend considerable resources to commence and complete the process of rejecting the collective bargaining agreement that the NLRB is trying to foist upon it against its wishes.

36. The better alternative is to enjoin the NLRB from even trying to foist the agreement on the AFL in the first place. That is the better alternative because it averts the costs associated with rejecting the agreement.

37. Accordingly, the prudent and responsible use of estate resources counsels strongly in favor of enjoining the NLRB from engaging in a useless and pointless action that serves no purpose other than to increase needlessly the fees and expenses charged to the Bankruptcy Estate.

38. The NLRB's actions also should be enjoined because the AFL does not have the resources at this time to defend itself. Thus, if the NLRB is not enjoined from pursuing its

Complaint, it is likely to obtain a default judgment against the AFL and then seek to enforce that judgment. To the extent the automatic stay does not prevent that outcome, the Court should prevent it through the exercise of its powers under §105.

39. An injunction also serves the public interest in this case and does not prejudice the Defendants. As noted above, the AFL is not employing Referees at this time. As such, there is no prejudice to Defendants if the Court stops them from forcing the AFL to sign a collective bargaining agreement. In fact, an injunction benefits Defendants because it saves them from spending resources to engage in the contract rejection process.

40. Finally, enjoining the Defendants from pursuing the Complaint serves the public interest because Defendants' actions threaten the well-being of the Bankruptcy Estate and make reorganization more difficult. Defendants' actions also are inconsistent with the priority scheme set forth in the Bankruptcy Code and other important Bankruptcy Code policies, including those that are designed to centralize the administration of claims and to give a debtor a breathing spell.

## **PRAYER FOR RELIEF**

WHEREFORE, for all the reasons set out above and any others the AFL raises in support of the requested relief, the AFL requests that the Court (a) enter an Order finding that the Defendants' actions in respect to the Complaint against the AFL are subject to the automatic stay or, in the alternative, enter a temporary restraining order enjoining the Defendants from proceeding with the Complaint against the AFL and setting this matter for a hearing on the entry of a preliminary injunction and (b) grant such further relief as is just and proper.

        Respectfully submitted,

        ARENA FOOTBALL LEAGUE, LLC

        By: /s/ William J. Factor

        One of its attorneys

William J. Factor (6205675)
**THE LAW OFFICE OF**
   **WILLIAM J. FACTOR, LTD.**
1363 Shermer Road, Suite 224
Northbrook, IL 60062
(847) 239-7248
(847) 574-8233
wfactor@wfactorlaw.com

11

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | |
| ARENA FOOTBALL LEAGUE, LLC, ) | Case No. 09-29024 |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | Hon. Susan Pierson Sonderby |
| ) | |
| ——————————————— ) | |
| ) | |
| ARENA FOOTBALL LEAGUE, LLC, ) | Adv. Pro. No. 09-00848 |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | |
| ) | |
| NATIONAL LABOR RELATIONS BOARD, ) | |
| and ARENA FOOTBALL OFFICIALS ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING MOTION
FOR DETERMINATION THAT STAY
<u>APPLIES TO NLRB ACTIONS</u>**

This matter having been presented to the Court upon the Motion of the Arena Football League, LLC for the entry of an Order finding that the Defendants' actions in respect to the Complaint against the AFL are subject to the automatic stay or, in the alternative, enter a temporary restraining order enjoining the Defendants from proceeding with the Complaint against the AFL and setting this matter for a hearing on the entry of a preliminary injunction ("Motion"); and the Court having considered the Motion and all matters pertinent to the relief requested therein; DOES HEREBY ORDER that;

The § 362(b)(4) exception to the Automatic Stay does not apply to the actions of the Defendants and they are barred from pursuing any labor complaint against the Arena Football League and taking any other actions against the Arena Football League outside of this Case.

_____
United States Bankruptcy Judge